USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-23-15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**REN YUAN DENG,**

**Plaintiff,**

**- against -**

**NEW YORK STATE OFFICE OF MENTAL HEALTH, et al.,**

**Defendants.**

**OPINION AND ORDER**

**13-CV-6801 (ALC) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

*Pro se* Plaintiff Ren Yuan Deng ("Deng") brings this action pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), and the New York Labor Law. Following a September 3, 2015 conference, at which Deng alleged numerous deficiencies in Defendants' discovery responses, Deng was ordered to write a letter to the Court explaining the alleged deficiencies with specificity. (Doc. No. 83.) Deng made several submissions to the Court, including a Motion to Compel Discovery. (Doc. Nos. 87, 89, 92.) Defendants responded to Deng's allegations. (Doc. Nos. 84, 88, 90.) Defendants also submitted to the Court courtesy copies of two sets of supplemental responses, dated September 10, 2015, and November 6, 2015. On December 18, 2015, Deng wrote to the Court, moving for sanctions against Defendants. (Doc. No. 95.) Defendants opposed that motion. (Doc. No. 96.) Having reviewed the submissions of the Parties, Deng's Motion to Compel Discovery is **GRANTED** in part and **DENIED** in part. Deng's Motion for Sanctions against Defendants is **DENIED**.

**1. Request Nos. 46, 49, 50, 51, 58, and 67 (Discovery Requests Relevant to Deng's Dismissed Failure to Promote Claim)**

Several of Deng's discovery requests pertain to her claim that Defendants failed to promote her to the position of Research Scientist V, and instead promoted an unqualified white candidate, Defendant Dr. Emily Leckman-Westin ("Leckman-Westin"). (Doc. No. 9 (Amended Complaint) at 3.) The requests in this category are Request Numbers 49 (questions regarding "the agency's peer review promotion process"), 46 (requesting information about an individual named "Shao," another Asian woman who Deng alleges was not promoted), 48 (seeking information about Leckman-Westin's race and credentials)[1], 50 and 51 (seeking information about Leckman-Westin's request for leave donations from other employees during her maternity leave), 58 (seeking information about the PSYCHKES project and the "newly created titles for the purpose of implementing" that project), and 66 (seeking information about when Defendant Molly Finnerty's ("Finnerty") group relocated buildings, which Deng says would "prove that Finnerty did not inform Deng when the Research Scientist V was available"). (Doc. No. 92 at 8-12.)

In his January 15, 2015 Order, District Judge Andrew L. Carter, Jr., dismissed Deng's "failure to promote" claim. (Doc. No. 41 at 20.) In addition to finding that Deng's 2008 oral request for the position fell outside the relevant time frame for her Section 1983 and Title VII claims, he found that the claims must be dismissed because "she never formally applied for the promotion." Citing *Brown v. Coach Stores, Inc.*, 163 F.3d. 706, 710 (2d Cir. 1998) ("We read *McDonnel Douglas* and *Burdine* generally to require a plaintiff to allege that she . . . applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion.") (Doc. 41 at 20.) Judge Carter found

[1] Defendants provided the information sought in this interrogatory in their response to Request. No. 52.

that the only factual claims that Deng alleged in her Complaint that could form the basis of a disparate treatment claim under the Equal Protection Clause or Title VII, which took place in the relevant time frame and were severe enough to rise to the level of an adverse employment action, were: (1) a notice of discipline that was placed in Deng's file (assuming that that notice was relied upon during Deng's termination arbitration); (2) Deng's denial of access to Office of Mental Health ("OMH") servers; and (3) Deng's exclusion from staff meetings that were necessary to do her job. (*Id.* at 19-20.)

Federal Rule of Civil Procedure 26(b) limits discovery to matter that is relevant to any party's claim or defense. Defendants argue that because Deng's failure to promote claim was dismissed, discovery targeted to prove this claim is not relevant. (Doc. No. 88 at 3.) Deng, in turn, argues that under *Chin v. Port Authority of New York and New Jersey*, 685 F.3d. 135 (2d Cir. 2012), evidence of discrimination is admissible, even if occurred outside of the limitations period, because it may constitute "relevant background evidence in support of a timely claim." (Doc. No. 92 at 11.) *Chin*, which takes place in the context of a class action claim, cites to *Petrosino v. Bell Atl.*, 385 F.3d. 210, 220 (2d Cir. 2004). In *Petrosino*, the plaintiff alleged constructive discharge and was permitted to introduce evidence of earlier promotion denials which, although outside the temporal window of her Title VII claim, arguably supported her surviving discrimination claim. *Petrosino*, 385 F.3d. at 220.

The promotion denials at issue in *Petrosino* are distinguishable from Deng's allegations. As recognized by Judge Carter, Deng does not claim that she ever formally applied for a promotion, and thus there can be no evidence of earlier promotion denials. The scope of the evidence that she seeks in Request Nos. 46, 48, 50, and 51—which she would use to prove that others who *were* promoted were unqualified—is not relevant to her surviving Title VII and

Section 1983 claims, which Judge Carter construed to be based on the notice of discipline, denial of access to OMH servers, and exclusion from staff meetings. (*See* Doc. No. 41 at 19-20.) The information that Deng seeks in Request Nos. 49 and 66 is targeted to prove a theory of constructive failure to promote, which Judge Carter already dismissed as a matter of law, and is not relevant to the surviving claims. (*Id.*) Thus, Deng's motion to compel supplemental discovery responses to Request Nos. 49, 46, 48, 50, 51, 58, and 67 is **DENIED**.

**2. Request Nos. 2 and 3**

Deng's Request No. 2 asks Defendants to "state the agency's record retention policy." Request No. 3 asks Defendants to "describe the agency's IT system and document destruction practices." In response to both, Defendants disclosed the agency's 147-page record retention policy. (Doc. No. 87, Exhibit 1.) Deng argues that the answer was evasive because she "has no foundation to identify" the relevant policies from these documents. (Doc. No. 92 at 4.) She seeks to link the policy to her claims of discrimination stemming from her denial of access to OMH servers and destruction of related email evidence. (*Id.*)

The document is an OMH directive on "Record Retention Periods," and states that "all records … shall be retained pursuant to the retention schedule delineated by this policy directive." (Doc. No. 87, Exhibit 1 at 1.) The directive, while dense, is responsive to Deng's requests. Specifically, information about email retention is located on DENG 861. Therefore, Deng's motion to compel supplemental discovery responses to Request Nos. 2 and 3 is **DENED**.

**3. Request Nos. 9 and 10**

Deng's Request Nos. 9 and 10 ask Defendants to produce all discrimination complaints filed against OMH with administrative agencies and courts within the last ten years. Defendants produced complaints of race discrimination, filed within the last five years, for the OMH central

office, where Deng worked. (Doc. No. 92 at 5.) Deng argues that evidence of "other acts" is probative of Defendants' likely motivation in her case. (Doc. No. 92 at 5.) She argues that she is entitled to ten years of records because her Title VII claim "covers from 2004 to 2013." (*Id.*) Further, she argues that all OMH employees, regardless of location, are under the umbrella of OMH, alleging that the discrimination goes up to the Commissioner of OMH. (*Id.*)

Defendants argue that the request is overbroad and burdensome, as OMH has approximately 15,000 employees who work at various facilities from psychiatric hospitals to offices, such as the one in which Deng worked. (Doc. No. 88 at 1.) They argue that the limited disclosure was proper because it was tailored to produce only relevant documents without undue burden on Defendants. (*Id.*) They also argue that the scope was proper because Judge Carter limited Deng's claims to events that occurred after 2010. (*Id.*) Further, they argue that only those claims by employees at the central office were relevant because proper comparators in an employment discrimination claim must share a common supervisor. (*Id.* at 2 citing *Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, CV06-672, 2007 U.S. Dist. LEXIS 98154, at *2-3 (E.D.N.Y. July 23, 2007) (citing sources omitted).)

I agree with Defendants that producing claims originating from facilities other than the central office would be overly burdensome as compared to the relative value of the evidence to be derived. Defendants are correct that discovery should be guided by identifying the decision-makers and the individuals competing with Plaintiff. Therefore, Deng's motion to compel production of discrimination claims from OMH facilities other than the central office is **DENIED**.

Defendants, however, have not demonstrated the undue burden of producing claims of racial discrimination before Deng's claims accrued. Although outside the relevant time frame of

Deng's Title VII claims, this information may still be probative of Defendants' intent. *See Chin*, 685 F.3d. at 150. Therefore, Defendants are **HEREBY ORDERED** to supplement Request Nos. 9 and 10 with information about complaints of racial discrimination filed against OMH by employees of the central office for a reasonable period before the 2010 limitation imposed by Judge Cater, which the Court determines to be three years, that is, back to 2007.

**4. Request No. 29**

Deng asked Defendants to identify the name, race, title, education background, and hiring date of the "person who defendant Finnerty assigned to review and approve of plaintiff's work." (Doc. No. 92 at 6.) Defendants provided information about Leckman-Westin but argued that "[t]o the extent that plaintiff seeks additional information, the request is ambiguous in that in any workplace there may be different people who work together on specific projects." (Doc. No. 88 at 2.) Deng writes that the request was targeted to obtain information about Finnerty's Answer to Amended Complaint, paragraphs 17 and 18, which stated that Deng's work needed to be "reviewed and approved." (Doc. No. 92 at 6.) Deng refers specifically to email exchanges with Finnerty wherein she was lead to believe that Britt Myrhol was directing or reviewing her work. (Doc. No. 92 at 6.)

Defendants' supplemental responses to Deng's discovery request, dated November 6, 2015, identify the name, race, title, education background, and hiring date of Britt Myrhol in response to Request No. 52. Therefore, Deng's motion to compel a supplemental response to Request No. 29 is **DENIED AS MOOT**.

**5. Request No. 33**

In Request No. 33, Deng sought the "document that defendant sent to the State Civil Service Commission." (Doc. No. 92 at 6.) In a subsequent letter, she clarified that this related to

Civil Service Law § 75.3, which requires that when an employee is "found guilty, a copy of the charges, the written answer, the transcript of the hearing and the determination must be placed on file in the office of the department or agency in which he/she has been employed. Copies must be filed with the State Civil Service Commission." (Doc. No. 92 at 4 (emphasis in original).) Defendants replied that they would investigate the existence of responsive documents.

To the extent that the underlying documents exist, and Defendants have not yet produced them, Defendants are **HEREBY ORDERED** to produce responsive documents, and any confirmation that the documents were filed with the State Civil Service Commission.

**6. Request Nos. 34, 36, and 37**

In Request Nos. 34, 36, and 37, Deng requests communications between OMH and the Employee Benefits Division ("EBD"), United Healthcare, and Wage Works, after Deng's termination. (Doc. No. 92 at 7.) Deng argues that these communications are important because she was unable to apply for Medicare because the date of her termination was in dispute, and she has been without health insurance for two years. (*Id.*) Defendants allege that OMH communicates with EBD through the New York Benefits Eligibility and Accounting System ("NYBEAS"), and subsequently supplemented responses with NYBEAS printouts. (Doc. No. 92 at 17.) Defendants claim that OMH does not communicate directly with United Healthcare or Wage Works, and that all communications are through EBD. (Doc. No. 88 at 2.)

Deng has not shown that these communications, assuming they exist, are relevant to her surviving claims or defenses. The communications that Deng seeks are related to her termination. Judge Carter held that Deng's termination, on May 17, 2013, was too far outside the window of when she filed her EEOC complaint for the termination to be legally cognizable

discrimination under Section 1983 or Title VII. (Doc. No. 41 at 23-24.) Therefore, Deng's motion to compel supplemental responses to Request Nos. 34, 36, and 37 is **DENIED**.

### 7. Request Nos. 40 and 41

Request Nos. 40 and 41 seek "any and all the documents regarding plaintiff's 'retirement' status" and the identity of the person who "classified Plaintiff as 'retiree' in the system." (Doc. No. 92 at 8.) Here, Deng refers to a NYBEAS printout, produced by Defendants, that shows Deng's status as "retired" in the database. (Doc. No. 92 at 17.) In their supplemental responses, dated September 10, 2015, Defendants claim to have no responsive documents.

As with the EBD communications above, Deng has not shown that the information sought, which relates to events that occurred after her termination, are relevant. Therefore, Deng's motion to compel supplemental responses to Request Nos. 40 and 41 is **DENIED**.

### 8. Request No. 43

In Request No. 43, Deng asks Defendants to identify the "person who reduced Plaintiff's monthly sick leave to 'half' on the time sheets," referring to Paragraph 108 of the Amended Complaint. Paragraph 108 refers to timesheets in June, July, and September 2012 in which she alleges she received "half sick credit" and "half vacation credit." (Doc. No. 9 at 49.) In their September 10, 2015 response, Defendants refer Deng to Bates stamped documents 92, 94-95.[2] In their November 6, 2012 response, they respond that "after review of Plaintiff's timesheets for the relevant time period, there is no indication that Plaintiff's monthly sick and vacation benefits were reduced to 'half.' The only alterations to Plaintiff's timesheets during this time period reflect adjustments made because Plaintiff's attempts to use leave were not authorized."

---

[2] The Parties have not attached these documents to any submissions so the Court is unable to review the adequacy of this response.

Defendants' response denies Deng's underlying accusation, that someone reduced her sick leave. However, it does not respond directly to Deng's request, which is, in substance, to identify the person who filled out the time sheets at issue. The timesheets, attached to Deng's letter, contain the signature of a supervisor but no printed name, and it is not possible to identify the name based on this signature alone. (Doc. No. 92 at 18-21.) Thus, Defendants are **HEREBY ORDERED** to supplement their response to Request No. 43 by identifying the individual or individuals who completed the timesheets at issue.

**9. Request No. 52**

Deng's Request No. 52 seeks the race, job title, rank, education background, promotion history, and hire and termination dates, for seven OMH employees. In its November 6, 2015 supplemental responses, Defendants provided the requested information for the seven employees. The "race" category for each was answered "upon information and belief." Deng objects that the race of an employee named Anthony Mancini was listed as "unknown."

Defendants have indicated that they do not keep records of race, and Deng has provided no basis for the Court to order Defendants to ascertain this information. Therefore, Deng's motion to compel a supplement response to Request No. 52 is **DENIED.**

**10. Request No. 53**

In Request No. 53, Deng seeks the same information as in Request No. 52, but regarding ten individual "non-state (RFMH) employees." Defendants answer that "the information sought is not maintained by OMH," and answer with respect to the only OMH employee on the list, April Ellis.

Defendants have indicated that they do not maintain records of non-state employees, and Deng has provided no basis for the Court to order Defendants to ascertain this information. Therefore, Deng's motion to compel a supplemental response to Request. No. 53 is **DENIED.**

**11. Request No. 60**

Request No. 60 asks Defendants to identify other employees in Finnerty's bureau who incurred "wage deductions" between June and October 2012. Defendants refer to Deng 3067-3136[3] and also state that "there are no known employees" from the bureau who incurred wage deductions. Deng objects that this answer is not under oath. The inquiry is relevant to Deng's claim that OMH made an illegal deduction from her wages under N.Y.L.L. § 193.

Defendants are **HEREBY ORDERED** to have its response to Request No. 60 verified by an individual with personal knowledge of the facts.

**12. Request Nos. 61, 62, and 63**

Requests 61, 62, and 63 apparently seek information about alleged tampering with her work computer at various points in 2012. These requests seek identity of (61) "each Person who invaded Plaintiff's computer network drive on 15 February 2012, and 26 February 2012"; (62) "each IT administrator in Albany involving dysfunction [sic] Plaintiff's computer in July-October, 2012"; and (63) "each individual who instructed to dysfunction [sic] Plaintiff's computer in July-October, 2012." (Doc. No. 92 at 11.) Defendants respond that they have no responsive information.

Request No. 61 can be construed as relevant to Deng's claim for retaliation under the FMLA, as it refers to Paragraph 89 of the Amended Complaint, which alleges that while Deng was on FMLA leave in 2012, "a number of files on her personal network drive" related to her

[3] The Parties have not attached these documents to any submissions so the Court is unable to review the adequacy of this response.

work were "mysteriously deleted." (Doc. No. 9, at 41.) Defendants' response does not make clear whether they have no information that any individuals engaged in this activity, or that they have no information about the identities of individuals who engaged in this activity. Therefore, Defendants are **HEREBY ORDERED** supplement their response to Request No. 61 by clarifying the scope of their response.

The time frames contained in Request Nos. 62 and 63, however, are outside the temporal scope of Deng's surviving claims and she has not demonstrated how the information sought in these requests is otherwise relevant. (Doc. No. 41 at 19, 23.) Request No. 62 relates to an alleged incident in which, on July 25, 2012, her "computer file" was "notably messed up," the problem apparently persisting for several weeks. (*Id.* at 57-58.) Request No. 63 apparently relates to an allegation that Deng's access to the computer network, applications, and databases, was cut off in September 2012, "the month before Deng's termination suspension." (*Id.* at 61.) Therefore, Deng's motion to compel supplemental responses to Request Nos. 62 and 63 is **DENIED**.

**13. Request No. 66**

Deng's Request No. 66 asks Defendants to provide information about OMH's alleged failure to repair a broken air conditioner near where Deng was sitting in the summer of 2011. In their supplemental response, Defendants contend that the information sought is not relevant as it relates to claims the Judge Carter dismissed in his January 15, 2015 Order. (Doc. No. 41 at 17.)

In his order, Judge Carter wrote that to impose liability for the broken air conditioner, "Deng would need to show that she made more of an effort to get OMH to improve these conditions. Instead, Deng indicates that she only complained once, and does not allege that her complaint was ever received." (*Id.*) The information sought in Request No. 66, "every reason why OMH decided not to repair the broken air conditioner," the identity of the person who

decided not to repair the air conditioner, and whether Finnerty replaced the air conditioner in her own office, even if discovered, would not cure the defect in Deng's claim.

Therefore, Deng's motion to compel supplemental responses to Request No. 66 is **DENIED**.

**14. Verification of Responses Under Oath**

Deng alleges that Defendants have verified under oath only thirteen of its answers to her seventy-eight interrogatories. (Doc. No. 92 at 3.) The Court notes that Defendants attached a verification by the Director of Human Resources for OMH to the courtesy copies of their September 10 and November 6 supplemental responses. To the extent that they have not done so already, Defendants are **HEREBY ORDERED** to have all interrogatory responses verified under oath, pursuant to Rule 33(b) of the Federal Rules of Civil Procedure.

**15. Sanctions Against Defendants**

Deng moves for sanctions against Defendants, alleging numerous examples of litigation abuse throughout the course of discovery. (Doc. No. 95.) As a remedy, she requests that the Court deem the facts related to her first interrogatory "established." (Doc. No. 95 at 2.) The Court has wide discretion to impose sanctions, but "[s]trong sanctions should be imposed only for serious violations of discovery orders . . . when failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). Having reviewed the submissions of the Parties on the matter of sanctions, as well as their numerous submissions regarding specific discovery disputes, I find that sanctions against Defendants are not warranted.

**CONCLUSION**

As set forth in the order and opinion above, **IT IS HEREBY ORDERED THAT**

(1) Deng's motion to compel is **GRANTED** with respect to Request Nos. 33 and 43;
(2) Deng's motion to compel is **GRANTED IN PART** with respect to Request Nos. 9 and 10;
(3) Deng's motion to compel is **DENIED** with respect to Request Nos. 2, 3, 29, 34, 36, 37, 40, 41, 46, 49, 50, 51, 52, 53, 58, 62, 63, 66, and 67;
(4) Defendants shall have their responses to Request No. 60 verified by an individual with personal knowledge of the facts by **February 1, 2016.**
(5) Defendants shall supplement their responses to Request Nos. 9, 10, 33, 34, and 61 by **February 1, 2016.**
(6) To the extent that they have not done so already, Defendants shall have all interrogatory responses verified under oath by **February 1, 2016**.
(7) Deng's Motion for Sanctions against Defendants is **DENIED**.

**SO ORDERED this 23rd day of December 2015**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**MAILED BY CHAMBERS**